UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Brad R. Johnson, | ) | Civil Action No. 4:03-3857-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | REPORT AND |
| Sallie Mae Servicing, L.P.; Christine | ) | RECOMMENDATION |
| Donnell; Mark E. Shure; Shelley M. Turner; | ) | |
| Able; Baker; Charlie, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant's motion to dismiss (Document # 31) filed September 20, 2005, seeking dismissal of the claims asserted in plaintiff's complaint under the doctrine of *res judicata*. The parties have briefed the issues and the matter is ripe for disposition.

Defendants set forth the facts and "history of the case" on pages 1-13 of their brief. Plaintiff does not contest much of that provided by the defendants. Therefore, the facts and background generally will be set out as presented by the defendant.

Educational loans are made to student borrowers by private lenders and guaranteed against default by either the United States, in the case of Federally Insured Loans, or governmental or not-for-profit institutions known as "guaranty agencies," in the case of what were formally called Guaranteed Student Loans and are now called Stafford Loans.

Guaranty agencies are either State agencies or nonprofit private institutions established for the purpose of administering and guaranteeing student loans. 20 U.S.C. §1078(a)(1)(c).

Plaintiff obtained student loans in the 1970s and 1980s. In 1997, the loans were in repayment

status and held by Sallie Mae. The monthly repayment amount was changed on several occasions subsequent to 1997. Plaintiff contends that the monthly repayment schedule was wrongfully changed.

Plaintiff filed suit in October 2000, in federal court in the District of Illinois. Brad R. Johnson v. Sallie Mae Servicing Corporation, Oregon Student Assistance Commission, and Texas Guaranteed Student Loan Corporation, United States District Court for the Central District of Illinois, Civil Action No. 00-2298. Plaintiff, a law school graduate, represented himself *pro se*. Against Sallie Mae, he asserted violations of the Racketeering Influenced and Corrupt Organization Act (RICO), breach of contract, breach of implied contract, promissory estoppel, libel, slander, intentional infliction of emotional distress, and violation of the Fair Debt Collection Practices Act. Against Oregon Student Assistance Commission (OSAC) and the Texas Guaranteed Student Loan Corporation (TGSLC), he asserted two counts of alleged RICO violations.

The district court granted summary judgment against plaintiff on July 30, 2003. Plaintiff appealed the adverse decision to the United States Court of Appeals for the Seventh Circuit which affirmed the district judge's decision.

**The Illinois Case**

Of the loans at issue in the Illinois case, six of the loans were FISL loans guaranteed by the Department of Education, and three were Stafford loans, two of which were guaranteed by OSAC and one by TGSLC. The loans are as follows:

| Loan No. | Loan Date | Type of Loan |
|---|---|---|
| 1 | 10/25/1976 | FISL |
| 2 | 09/02/1977 | FISL |

| | | |
|---|---|---|
| 3 | 08/18/1978 | FISL |
| 4 | 09/17/1979 | FISL |
| 5 | 11/04/1983 | Stafford (OSAC) |
| 6 | 08/15/1984 | Stafford (OSAC) |
| 7 | 08/12/1985 | FISL |
| 8 | 03/31/1988 | Stafford (TGSLC)[1] |

Plaintiff contended that in 1997 he entered into an oral agreement with a "Ms. Vickie" from Sallie Mae pursuant to which Sallie Mae agreed to change the repayment schedule by allowing the plaintiff to make aggregate monthly payments on the loans of $232 from September 1997 through April 2001, with higher payments of $348.41 being due thereafter until paid. He further alleged that approximately a year later, Sallie Mae "unilaterally" raised the monthly payment by $113, to $345.44 per month. Plaintiff alleged that the change in his monthly payment breached the "contract" he had with Sallie Mae in September 1997.[2]

The Illinois case complaint contains eleven counts. Counts one through four of the Third Amended Complaint, plaintiff contended that seeking to collect the increased amounts violated each of the four subsections of the RICO statutes, 18 U.S.C. §1962. In addition, counts III and IV alleges that TGSLC and OSAC violated sections (c) and (d) of §1962 by joining with Sallie Mae in an "enterprise" and by "conspiring" with Sallie Mae to violate RICO.

---

[1] Plaintiff asserts in his opposition memorandum that one of the loans listed by defendants was not part of the Illinois case and not an existing loan. Specifically, he asserts that the FISL loan dated 01/26/1977 was not at issue in the Illinois case.

[2] Apparently, plaintiff did not pay the increased amount asserting that he was not bound to do so.

Count Five is a state law claim for breach of contract, alleging Sallie Mae breached the "contract" it had made for a change in the graduated payments.

Count Six is a state law claim for breach of an implied contract between Sallie Mae and the plaintiff for a change in the graduated payments.

Count Seven is a state law claim for detrimental reliance and promissory estoppel, again alleging that Sallie Mae agreed with plaintiff to change his payment schedule, and that plaintiff detrimentally relied on the agreement to his detriment.

Counts Eight and Nine are state law claims for libel and slander, alleging Sallie Mae made defamatory statements concerning plaintiff to various credit bureaus and to TGSLC and OSAC that his loans were in default.

Count Ten is a state law claim for intentional infliction of emotional distress wherein plaintiff alleges Sallie Mae caused him extreme emotional harm by harassing him and threatening him about his loans.

Count Eleven alleges a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

While the Illinois case was pending, plaintiff filed a motion for leave to amend his complaint to add Shelly Turner of OSAC, Christine Donnell of Sallie Mae, and Mark E. Shure, defendants' counsel, asserting that they were additional participants in a RICO conspiracy.[3] On July 31, 2003, the district judge denied the motion for leave to amend to add additional parties and claims, and granted summary judgment to the defendants on the same date. Plaintiff's motion for reconsideration was denied on August 20, 2003, and the district court's decision was upheld by the Seventh Circuit on May 24, 2004.

---

[3] It does not appear that plaintiff appealed this decision denying his motion to amend.

**The South Carolina Case**

In the instant action, plaintiff asserts ten causes of action regarding the same student loans litigated in the Illinois case. Count One alleges that Sallie Mae, by seeking to collect the additional amounts per month violated subsection (a) of RICO by engaging in a pattern of racketeering and collection of a unlawful debt, including wire fraud, mail fraud, attempted extortion, conspiracy to extort, and embezzlement.

Counts Two and Three allege violations of RICO under subsection (c) and (d) against all defendants for allegedly conspiring to and engaging in an enterprise to commit racketeering activity as alleged in Count One.

Count Four is a state law claim against Sallie Mae alleging breach of contract accompanied by fraudulent act.

Count Five is a state law claim against Sallie Mae, alleging a violation of the South Carolina Unfair Trade Practices Act, in the form of unilaterally changing the payment schedule and transmitting false information to third party credit reporting agencies.

Count Six is a state law claim against Sallie Mae for libel for publishing defamatory statements concerning the delinquency of plaintiff's student loans.

Count Seven is a state law claim against Sallie Mae for intentional infliction of emotional distress for Sallie Mae's allegedly improper actions in attempting to collect the debt.

Count Eight is a claim brought under 42 U.S.C. §1983 against Defendant Turner (OSAC employee), alleging she, under color of state law, took his property without due process, when she among other things, reported his loan status to credit reporting agencies.

Count Nine, alleged as a Bivens action, is a constitutional claim against Defendant Donnell

(Sallie Mae employee), alleging that she, under color of state law, deprived plaintiff of his property without due process when she allegedly caused the "1997 Repayment Schedule" to changed for a fourth time.

Count Ten is a state law claim against Defendants Turner, Donnell and Shure, alleging a civil conspiracy to commit mail fraud, wire fraud, attempted extortion, and conspiracy to extort in connection with the collection of the student loans.

*Discussion*

As set forth by the plaintiff, the clear distinction between the Illinois case and the South Carolina case is the dates of the alleged improper conduct. The Illinois case alleged acts that occurred on or before the filing date of the Illinois case – October 2000.[4] Conversely, the alleged acts asserted in the South Carolina case occurred after December 1, 2000. Plaintiff asserts, therefore, that defendants fail their burden on the second element of *res judicata* – identity of the claim.

Plaintiff asserts that collateral estoppel does not apply to the cause of action for violation of the South Carolina Unfair Trade Practices Act because the allegations in this case involve alleged actions occurring after the Illinois case was filed, especially, he argues, the fourth unilateral change in the repayment schedule. Likewise, plaintiff asserts that Counts VIII and IX allege claims against the individual defendants for conduct occurring after the Illinois case was filed

Plaintiff asserts that claim preclusion and issue preclusion do not apply in the instant case because the causes of action are not the same. He asserts that this case involves different state law legal theories, and do not involve the same operative facts based on the different time frames

---

[4] Plaintiff's Third Amended Complaint in the Illinois case was filed on or about August 21, 2001.

involved as set forth above, ie, pre-November 1, 2000 and post-December 1, 2000, especially the "fourth unilateral change in Plaintiff's 1997 Repayment Schedule to $425.24 per month."[5] He asserts that at no time was this even mentioned in the Illinois case.

Therefore, plaintiff asserts that Counts I-III which allege violations of RICO should not be dismissed.

Plaintiff also asserts that the operative facts are different in that the alleged fraud asserted in the Illinois case involves different facts than that asserted in the instant case, namely events or actions occurring after the Illinois case was filed, as well as the claim for violation of his right to due process. In fact, plaintiff argues, it is impossible for the set of facts involved in this case to be the same as the Illinois case because they had not occurred.

Defendant brings the instant motion pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. A motion to dismiss under Rule 12 tests the sufficiency of the complaint. It does not resolve conflicts of facts. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. It does not resolve conflicts of facts, the merits of the claim, or the applicability of defenses asserted. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the factual allegation in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,1134 (4th Cir. 1993).[6]

---

[5] The exhibits attached to plaintiff's complaint in this action seem to indicate changes to the repayment schedule in 2003, as well as correspondence in 2003.

[6] While it is appropriate under some circumstances to consider matters outside the pleadings for purposes of application of *res judicata*, generally when matters outside the

"Res judicata is applied to prevent the re-litigation of claims, and thus prevent the unsettling of a prior judgement, whether by increasing or decreasing the award or by reversing the result." Heckert v. Dotson, 272 F.3d 253, at 258 (4th Cir. 2001). As stated by the Fourth Circuit,

> Under the res judicata principles, a prior judgement between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication. The doctrine of res judicata encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel. The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgement in the prior action bars litigation 'not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.' However issue preclusion is more narrowly drawn and applies when the later litigation arises from a different cause of action between the same parties. Issue preclusion operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction in the first litigation.' Thus, while issue preclusion applies only when an issue has been actually litigated, claim preclusion requires only a valid and final judgement."

Orca Yachts, L.L.C. v. Mollicam, Incorporated, 287 F.3d 316, at 318 (4th Cir. 2002)(internal citations omitted).

Claim preclusion bars the relitigation of claims that were raised or could have been raised in prior litigation. It, however, does not apply to all claims that were raised or could have been raised in the prior litigation. Claims are barred "only when three elements are satisfied: 1) the prior judgement was final and on the merits[7], and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two

---

pleadings re considered the motion should be treated as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

[7] For purposes of res judicata, summary judgement is considered a final judgement on the merits. McMahon v. International Association of Bridge, Structural & Ornamental Iron Workers, 858 F. Supp. 529, 551 (D.S.C. 1994).

actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." The Pittston Co. v. United States, 199 F.3d 694, at 704 (4th Cir. 1999) (internal citations omitted).

The Fourth Circuit has held that the appropriate inquiry to determine whether causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation "arises out of the same transaction or series of transactions as the claim resolved by the prior judgement." The Pittston Company, at 704 (internal citation omitted). "The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or common nucleus of operative facts.'" Id.

Generally, claim preclusion does not apply to claims that did not exist at the time the complaint in the prior action was filed. Lundquist v. Rice Mem.Hosp., 238 F.3d 975 (8th Cir. 2001); Prime Management Co. v. Steinnegger, 904 F.2d 811, 815-816 (2nd Cir. 1990)(same); Klein v. John Hancock Mutual Life Ins. Co., 683 F.2d 358, 360 (11th Cir. 1982)(same); Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 774 & n.3 (4th Cir. 1991)(in dicta). Cf. Peugot Motors of America v. Eastern Auto Distributors, Inc., 892 F.2d 355, 359 (4th Cir. 1989)(practices that continued beyond filing of complaint barred by claim preclusion).

As set forth above, plaintiff asserts that the principles of *res judicata* do not apply to this action because he basis the claims in this action on conduct occurring after December 1, 2000. While it is clear that his complaint asserts conduct occurring prior to December 1, 2000, he does clearly rely on alleged conduct occurring after December 1, 2000, although the specific conduct and related dates is not set forth.

Plaintiff presents conduct occurring as late as 2003. Defendants have failed to show the

conduct was a mere continuation of the same conduct addressed in the Illinois case. In fact, the record does not disclose the details of the alleged conduct occurring after the Illinois case was filed (or after the Third Amended Complaint was filed).

Defendants also assert in a single sentence that plaintiff's claims should be dismissed because they are patently frivolous.[8] While this may be so, such a determination can not be made from the record presented.

Additionally, defendants argue that plaintiff's state law claims should be dismissed because they are preempted by federal law. Without discussion, defendants' cite to the district judge's order in the Illinois case for support.[9] It appears clear that the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq*, (HEA) and the regulations promulgated thereunder preempt some state laws. See , e.g., 20 U.S.C. §1080a (requiring holders to report status of loans to credit bureau organizations); 34 C.F.R. §682.410; 34 C.F.R. §682.411; 55 Fed. Reg. 40120-01 (1990);  *See* College Loan Corp. v. SLM Corp., 396 F.3d 588, 595-599 (4th Cir. 2005)(general discussion of state law preemption by HEA). The undersigned is unable to consider this issue based on the brief presentation made by the defendant which does not comply with Local Rule 7.05, D.S.C.

Defendants have failed to meet their burden of showing entitlement to dismissal under Rule 12 or Rule 56 of the Federal Rules of Civil Procedure. While *res judicata* or other reason for dismissal may or may not apply to this case if presented with the additional factual information and discussion and authority, defendant has failed to meet their burden as presented.

---

[8] *See* page 13 of Defendants' Motion and Memorandum in Support of Motion to Dismiss.

[9] *See* page 19 of Defendants' Motion and Memorandum in Support of Motion to Dismiss.

For the foregoing reasons, it is RECOMMENDED that defendants' motion to dismiss (Document # 31) be DENIED.


June 21, 2006                              s/Thomas E. Rogers, III
Florence, South Carolina                   Thomas E. Rogers, III
                                           United States Magistrate Judge


**The parties' attention is directed to the important information on the attached notice.**

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
